## Case No. 9,291.

### MATTHEWS v. SKATES et al.

[1 Fish. Pat. Cas. 602; Merw. Pat. Inv. 663.] [1]

Circuit Court, S. D. Alabama. April, 1860.

PATENTS—INVENTION—WHEN REACHED—DATE OF PATENT—IDEA FIRST PERFECTED—SIMILARITY OF STRUCTURE—EQUIVALENTS.

1. It is not until the reflections, investigations, and experiments of the inventor have reached such a point of maturity that he not only has a clear and definite idea of the principle and of its application, but has reduced his idea to practice and embraced it in some distinct form, that it can be said that he has achieved a new and useful invention. This must necessarily be sometime, more or less, before the date of the patent, and sometime, more or less, after the first conception by the inventor.

2. To defeat a patent, it must appear that the invention was substantially communicated to the patentee by some other person, so that, without the exercise of any inventive power of his own, he could have applied it to practice.

3. Though others may have previously had similar ideas, and may have experimented upon them, the person who first perfected the idea and made it capable of practical use, is the inventor, and entitled to a patent.

4. Similarity in the structure, appearance, and effect of two things, is presumptive evidence of their being made in the same way.

5. It is not necessary to constitute an infringement that a man should work by the specifications contained in the patent. He might not even know there was such a patent, and yet infringe it.

6. Where a patent is granted for a composition made of several ingredients, it covers and embraces known equivalents of each of the ingredients.

7. An equivalent of any substance is another substance having similar properties, and producing substantially the same effect.

This was an action [by William J. Matthews against B. S. Skates and others] on the case tried before Judge Jones and a jury, to recover damages for the alleged infringement of letters patent [No. 5,767], for an "improved composition for metallic packing in steam engines," granted to Green S. Cox, October 2, 1849. The invention consisted of a composition of lead, zinc, tin, and antimony, for the purpose of forming a steam-tight packing.

Anderson & Boyles and Overall & Moulton, for plaintiff.

E. S. Dargan and F. M. Taylor, for defendants.

JONES, District Judge, (charging jury). This action is brought by the plaintiff, as assignee of a patent issued to Green S. Cox, October 2, 1849, to recover damages for an alleged infringement by the defendants. The patent to Cox, with the specifications attached, has been read in evidence to you, and it is admitted that it was duly assigned to the plaintiff in July last. The defend-

1 [Reported by Samuel S. Fisher, Esq., and here reprinted by permission. Merw. Pat. Inv. 663, contains only a condensed report.]

ants, among other grounds of defense, insist that the invention described in the patent to Cox was previously known to and used by Babbitt, and is covered by a prior patent to Babbitt, which is also in evidence before you.

That you may properly understand the nature and effect of these patents, as instruments of evidence, I will first state to you the object and source of the provisions of the patent laws. The object of the patent laws is to encourage inventors by securing to them for a limited period (fourteen years) the benefit of their inventions. It is not every invention, however, that will be thus encouraged. To be entitled to a patent, the applicant must not only be the first inventor of the thing to be patented, but the invention must be new and useful. To guard the public as far as possible against patents being taken out by other persons than the first inventors, or for little, frivolous, useless changes or inventions, a particular office has been established, called the "patent office," under the superintendence of a commissioner of patents.

A number of examiners are appointed, presumed to have skill and experience in such matters. Every application for a patent must be addressed to this office, and subjected to the scrutiny of these officers. The applicant must make oath that he is the original inventor; he must file specifications minutely describing his invention, and furnish accurate models or specimens of his invention. He must show that his invention is new and useful. All this must be done to the satisfaction of the proper officers of the government, before a patent will be granted. Having gone through this ordeal, the law very properly makes the patent, when issued, prima facie evidence that the invention is new and useful, and that the patentee is the first inventor. The construction of the patent to Cox, and also of the patent to Babbitt, presents questions of law for the court to decide. It is for the court to decide, from the language of the patent and the specification attached to it (which is part of the patent) what is the invention embraced by Cox's patent, and what is the invention embraced by Babbitt's patent, and to determine whether they are or are not substantially the same. The invention of Babbitt is an improved mode for making boxes for axles and gudgeons in the manner set forth in his specifications; that is to say, by the casting of hard pewter or composition metal, of which tin is the basis, into said boxes, they being first prepared and provided, or not, with rims or ledges, and coated with tin, as described in the specifications. This is not a patent for the making of tin, pewter, or any composition metal, but for making boxes for axles or gudgeons of the materials, and in the manner described in his specifications. In Cox's patent, some difficulty arises from a slight

variance between the language used in the first part and that used in the latter part of the specification. The patent recites that Cox "alleged that he has invented a new and useful improved composition for metallic packing in steam engines." In the specifications, Cox states that the nature of his invention consists in a composition of the following metals, to-wit: lead, zinc, tin, and antimony, for the purpose of forming a steam-tight packing, etc. He then states the proportion in which these metals are to be generally used in making the composition, and the manner in which the composition is formed into rings and applied as packing. He concludes as follows: "What I claim as my invention, and desire to secure by letters patent, is the application of the composition above described, for the purpose of packing steam engines.". There is manifestly some difference in the language of this claim, and the recital of his claim in the first part of the patent. But the granting part of the patent gives him an exclusive right to his invention, "a description whereof is given in the words of said Cox, in the schedule hereto annexed, and is made a part of these presents." The invention described in the schedule or specification is therefore the thing patented to. Cox—that is. the application of metallic rings, made of a composition of lead, zinc, tin, and antimony, for the purpose of packing steam engines, in the manner described in his specification. This is an entirely different thing from that which was patented to Babbitt, and is not covered by Babbitt's patent.

There are four principal and material questions of fact for the jury to determine from the evidence. 1st. Was this alleged invention of Cox new and useful? However new an invention may be, it can not be legally patented unless it was also useful; and however useful it may be, it can not be legally patented unless it is new. If, therefore, you find, from the evidence, that the application of the composition described by Cox, for the purpose of packing steam engines, was not new or not useful, the patent would be void, and you should find for the defendants. In determining this question of fact, I charge you that the patent itself is prima facie evidence that this invention is both new and useful. Curt. Pat. 30; Alden v. Dewey [Case No. 153].

It is only prima facie evidence, however, and its effect is to throw upon the defendant the burden of proving that the invention is not new or is not useful. If the composition described in Cox's patent was known and used either for packing or other purposes, before his invention of it, in a form or manner substantially the same as that described by him, it would not be a new invention. A mere new use or application of a material or composition previously known is not a new invention. The point of time to which you are to look in deciding this

question is the time of the invention. It is neither the date of the patent, nor is it the time when the idea was first conceived by the inventor. It is the time when the idea is not only distinct and complete in the mind of the inventor, but that idea is reduced to practice and embodied in some distinct form. Curt. Pat. 43. This must necessarily be sometime, more or less, before the date of the patent, and sometime, more or less, after the first conception by the inventor. When the idea first entered into the mind of the inventor, it is, almost necessarily, in a crude and imperfect state. His mind will naturally. dwell and reflect upon it. It is not until his reflections, investigations, and experiments have reached such a point of maturity, that he not only has a clear and definite idea of the principle and of the mode and manner in which it is to be practically applied to useful purposes, but has reduced his idea to practice, and embraced it in some distinct form, that it can be said he has achieved a new and useful invention. That is the real time of his invention, though it may be months or years before he obtains a patent for it. Indeed, he would be none the less an inventor though he never obtained a patent for it. In determining the question whether the invention was new or not, that is the time to which you are to look, and not merely the date of the patent.

Cox, the patentee, has been examined as a witness before you, and he tells you he first conceived the idea of using a metallic compound for packing for steam engines in 1837, when he was an engineer on a steamboat on the Chattahoochie river; that he experimented on it from time to time; that in 1847, he became part owner of a steamboat on the Chattahoochie, and then first used the composition, as described in his specification, and found it useful and succcessful. You are the judges of what degree of bias he labored under when testifying, and of what weight and credit is to be given to his testimony. You are also to give due consideration to the testimony of other witnesses on this point, and decide upon the whole testimony whether the alleged invention was or was not new and useful at the time it was made. If you find it was not new or not useful, there is an end of the case, and you must render a verdict for the defendant. If, however, you find that it was new and useful, you will proceed to inquire into the next material question of fact, viz:

2d. Was or was not Cox the first inventor of the matter patented to him? In order to constitute a man an inventor, it is generally necessary that he must have exercised some inventive faculty of his own. I say generally necessary, because there might, no doubt, be cases in which an invention might be the result of pure accident. But the fact that he has received some ideas, hints, or suggestions on the subject from others, would not prevent him from being considered an inventor, and entitled to a patent as such. To have that effect. it must

appear that the invention was substantially communicated to him by some other person, so that, without the exercise of any inventive power of his own, he could have applied it in practice. Though others may have previously had similar ideas. and may have experimented upon them, the person who first perfected the idea, and made it capable of practical use, is the inventor, and entitled to a patent. Curt. Pat. 48. The patent to Cox is prima facie evidence that he is the original inventor of the invention described in the patent. This throws upon the defendant the burden of proving that some other person was the inventor. I presume you remember the evidence on this point on both sides. It is for you to weigh and consider all the evidence, and determine from it whether Cox was or was not the first inventor. If he was not, that ends the case, and you should find for the defendants. If he was the first inventor. then you will proceed to inquire into the next material fact, viz:

3d. Have the defendants infringed on the patent granted to Cox or not? To determine this point properly, you should bear in mind what is claimed as Cox's invention, and what is patented to him. He did not claim a patent for metallic packing for steam engines of every description. Any one might. no doubt, make packing of lead, tin, copper, type-metal, or any other metal or composition previously known, without infringing on Cox's patent right. To constitute an infringement of his patent, the packing must be made substantially of the same materials as those described in Cox's patent. It is not necessary to constitute an infringement, that a man should work by the specifications contained in the patent. He might not even know there was such a patent, and yet infringe on it. Neither will a slight or immaterial change in the ingredients, or the manner of preparing them, make any difference. If, for example, a man were to use the ingredients specified in Cox's patent, and were to add a small portion of some other metal, say of copper or silver, or were to vary the proportions so that the result was not materially changed, it would be an infringement. In this case, it is not disputed but that the defendants made rings of some metallic composition for the packing of steam engines.

The question of fact for you to decide from the evidence on this branch of the case is this: Was the packing so made by the defendants substantially the same with that described in Cox's patent, or was it not? The burden of proof on this point rests on the plaintiff. He must prove that it is substantially the same. The plaintiff, to do this, has proved the manner in which Cox's metallic composition is made, and has produced a specimen of it before you, which you can examine. He has also examined witnesses as to the manner in which the defendants make metallic packing, and has produced a specimen before you which he proves came from the defendants' foundry. You can look at that specimen, also, and compare it with the other. It has been decided that similarity in the structure, appearance, and effect of two things is presumptive evidence of their being made in the same way (Curt. Pat. 226, 227), and such is the law. One of the defendants' witnesses, Mr. Stevens, who had been in their employment for many years as foreman, testified that the defendants, in making metallic packing, did not follow the specifications of Cox's patent: that they used lead, copper, tin, and antimony, generally varying the proportions as their customers wanted it harder or softer, and that he had no knowledge or recollection of their ever using zinc until within the past month. The principal difference between the two compounds, according to the testimony of this witness, is, that in Cox's, zinc is used, while in the defendants', copper, in place of zinc. It is insisted on the part of the plaintiff, that even if this be so, copper is. in such a composition, an equivalent of zinc, and its use instead of zinc, does not prevent the manufacture from being an infringement of Cox's patent. The law on this subject is, that where a patent is granted for a composition made of several ingredients, it covers and embraces known equivalents of each of the ingredients.

An equivalent of any substance is another substance having similar properties and producing substantially the same effect. Whether in such a composition as this, copper is an equivalent of zinc, is a question of fact for you to decide from the evidence. if you consider it material. Under the charges given, you will decide whether the defendants have or have not infringed on the plaintiff's patent right.

If you find from the evidence that Cox was the inventor of the invention described in his patent, and that the invention was at the time of its invention new and useful; and further, that the defendants have infringed on the patent right secured by Cox's patent. since the assignment to the plaintiff, and before the commencement of this suit, you will then inquire what damages the plaintiff has thereby sustained. Proof has been given, though not of a very exact character, of the profits made by the defendants since July last by the manufacture of the metallic packing. On this basis you can make some estimate of the damages. The amount of damages is stated by the counsel of the plaintiff, not to be their principal object in this case. The principal object is to establish the plaintiff's right. Still, if he is entitled to recover at all, you should give him such an amount of damages as, under the evidence, you find is the actual damage sustained by him by the defendants' infringement of his right.

MATTHEWS (UNITED STATES v.). See Cases Nos. 15,741a and 15,742.